Docket No. 13-1310

UNITED STATES COURT OF APPEALS FOR THE FOURTH
CIRCUIT

_____

Robert Goss, *et al.* v. Bank of America, N.A.

_____

Appeal from the U.S. District Court for the District of Maryland
_____

BRIEF OF APPELLANTS
ROBERT GOSS AND SHIRLEY GOSS

_____

Jason Ostendorf

Law Office of Jason Ostendorf LLC
One Corporate Center, Suite 400
10451 Mill Run Circle
Baltimore, Maryland 21117-5594
Telephone: 410.356.8859
Facsimile: 410.356.8804

*Counsel for Appellants Robert
Goss and Shirley Goss*

Dated: May 6, 2013

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-1310__    Caption: _Goss, et al. v. Bank of America, N.A._____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Robert Goss_____
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                ☐ YES ☑ NO
      If yes, identify all such owners:

i

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
       If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
       If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
       If yes, identify any trustee and the members of any creditors' committee:

Signature: s/ Jason Ostendorf                          Date: _____03/25/2013_____

Counsel for: Appellants

## CERTIFICATE OF SERVICE
***************************

I certify that on _____03/25/2013_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

s/ Jason Ostendorf                                    03/25/2013
      (signature)                                        (date)

07/19/2012
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. ___13-1310___    Caption: ___Goss, et al. v. Bank of America, N.A._____

Pursuant to FRAP 26.1 and Local Rule 26.1,

___Shirley Goss_____
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

iii

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: __s/ Jason Ostendorf_____    Date: _____03/25/2013_____

Counsel for: __Appellants_____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____03/25/2013_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

__s/ Jason Ostendorf_____    _____03/25/2013_____
         (signature)                              (date)

07/19/2012
SCC

## TABLE OF CONTENTS

Corporate Disclosure Statements ..............................................i

Table of Authorities...................................................1

I.      Jurisdictional Statement ......................................3

II.     Statement of the Issues...........................................4

III.    Statement of the Case ...........................................4

IV.     Statement of Facts .................................................7

V.      Summary of the Argument .....................................9

VI.     Argument.............................................................11

    A.      Standard Of Review ....................................11

    B.      The Lack Of A Private Right Of Action
        Under The Federal HAMP Program Does
        Not Preclude Viable State Law Causes Of
        Action........................................................12

    C.      BANA Made A Valid Offer/Promise Upon
        Which The Gosses Relied To Their
        Detriment By Virtue Of Their Actions In
        Accepting The Offer ....................................13

    D.      Alternatively, BANA Entered Into A
        Contract Under An Implied-In-Fact Theory ...............14

    E.      Appellee's False Statements In The
        Collection Of The Consumer Debt Subject It
        To Liability Under The Maryland Consumer
        Protection Act And Other "Fraud-Based"
        Claims........................................................17

F.  Appellee Assumed A Duty When It Agreed To Process Appellants' Loan Modification Application Under HAMP, And This Duty Required Appellee To Adhere To The Applicable Standard Of Care – The Underwriting Standards Outlined By The HAMP Guidelines ........................................................ 20

VII.  Conclusion .............................................................. 23

VIII.  Certificate of Compliance ...................................... 24

# TABLE OF AUTHORITIES

<u>Cases</u>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................... 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .............. 11

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999) ................................................................................... 11

*Finch v. Hughes Aircraft Co.*, 57 Md. App. 190, 232 (1984) ................................................................................... 17

*Levin v. Singer*, 227 Md. 47 (1961) ........................................... 17

*Jacques v. First Nat. Bank of Md.*, 307 Md. 527 (1986) ............................................................................... 20-21

*LaVan v. United States*, 382 F.3d 1340 (Fed. Cir. 2004) ............................................................................... 14-15

*Mathis v. Hargrove*, 166 Md. App. 286 (2005) ........................ 17

*Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993) ................................................................................... 11

*Presley v. City of Charlottesville*, 464 F.3d 480 (4th Cir. 2006) ........................................................................... 11

*Spaulding v. Wells Fargo Bank, N.A.*, No. 12-1973, 2013 WL 1694549 (4th Cir. Apr. 19, 2013) ................... *passim*

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ................................................................. 12

*Travel Committee, Inc. v. Pan America World Airways, Inc.*, 91 Md. App. 123, 179 (1992) ......................... 17

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) ........................................................................ 12

Constitutional Provisions, Statutes & Rules

Md. Code, Com. Law § 13-101 *et seq.*....................................18-19

# I.   JURISDICTIONAL STATEMENT

## A.   District Court's Jurisdiction

This civil action was filed against Appellee in the U.S. District Court for the District of Maryland, No. 1:12-cv-02680-CCB, on September 7, 2012. There was diversity of citizenship between the parties to the action. The district court, therefore, had jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## B.   Court Of Appeals' Jurisdiction

This Court has jurisdiction over this matter, pursuant to 28 U.S.C. § 1291, in that this appeal is taken from a final decision of the U.S. District Court for the District of Maryland.

## C.   Filing Dates Establishing Timeliness

The district court issued an order dismissing the action in its entirety on January 8, 2013. Pursuant to Fed. R. Civ. P. 59(e), Appellants/Plaintiffs moved for reconsideration on February 5, 2013. The district court denied said motion on February 7, 2013. Appellants filed a notice of appeal on March 6, 2013. This appeal, therefore, was timely noted pursuant to Fed. R. App. P. 4(a)(4)(A)(iv).

D.    <u>Final Order</u>

The February 5, 2013 order of the U.S. District Court for the District of Maryland was a final order that disposed of all parties' claims, in that the order dismissed the entire action.

## II.    <u>STATEMENT OF THE ISSUES</u>

A. Whether the lower court erred as a matter of law in granting Appellee's motion to dismiss.

B. Whether the lower court erred in making factual findings in violation of a United States citizen's constitutional right to a jury trial under the Seventh Amendment to the Constitution.

## III.   <u>STATEMENT OF THE CASE</u>

Although this lawsuit arises from faulty mortgage servicing in connection with Appellants application for a loan modification under the Home Affordable Modification Program ("HAMP"), it is distinguishable from this Court's decision in *Spaulding v. Wells Fargo Bank, N.A.*, No. 12-1973, 2013 WL 1694549 (4th Cir. Apr. 19, 2013).  In *Spaulding*, this Court held that the complaint failed to state a claim because the alleged offer was illusory in light of the servicer's qualifying language, "we determine if you qualify".  *Id.* at *12-13.

In the present matter, BANA's offer contained no such qualifying

language. App. 60-61. Rather, BANA made the following offer:

> I am pleased to inform you that Bank of America referred your account to our Home Retention Division. Workout Negotiator Kim Shelton has been assigned to your account to **assist your request in being reviewed for the HAMP program** and other workout options. By the time you receive this letter, Ms. Shelton may have already contacted you, but in the event she has not, we recommend you contact her . . . to discuss Bank of America's review of the account. **We encourage you to work closely with Ms. Shelton** regarding the account review for possible workout options available.
>
> . . . **Loan modification terms are based on individual homeowner qualification** and their specific financial situation as well as programs available at the time of the application. Please note that workout assistance is not guaranteed **and is dependent on several factors**.

App. 61. A jury may reasonably infer from the context and totality of

the language used (particularly the absence of any qualifying language

permitting BANA to retain discretion) that BANA offered to extend a

loan modification on underline terms prescribed by HAMP, if the Gosses satisfied

HAMP's qualification guidelines. To accept the offer, the Gosses merely

needed to contact BANA and submit paperwork, which they did.

Thus, unlike in *Spaulding*, no discretion was left to BANA. The

offer contained no "we determine" language. No reference was made to

BANA's ability to make a determination, nor was there any reference to

any BANA qualification factors. Rather, the language BANA used in its offer left determination up to the mechanical, self-operating HAMP qualification factors and HAMP's loan term guidelines.[1] App. 62-123.

BANA is liable for breach of contract and promissory estoppel because the Gosses accepted BANA's offer to comply with HAMP, and BANA refused to adhere to HAMP. This lawsuit further charges BANA with making misrepresentations in servicing the consumer mortgage debt, because the complaint alleges that BANA had no intent to keep its offer/promise to follow HAMP at the time it made the offer/promise. Lastly, since BANA owed a duty of care arising from its contractual privity with the Gosses, and the foreseeable harm to the Gosses (loss of their home), and since BANA failed to honor the applicable standard of care and industry standards (the HAMP Guidelines), BANA is liable for negligence.

---

[1]    U.S. Department of the Treasury & Fannie Mae's MAKING HOME AFFORDABLE PROGRAM HANDBOOK FOR SERVICERS OF NON-GSE MORTGAGES (the "HAMP Guidelines").

IV.   <u>STATEMENT OF FACTS</u>

On June 21, 2011, BANA made the following written offer to the Gosses:

> I am pleased to inform you that Bank of America referred your account to our Home Retention Division. Workout Negotiator Kim Shelton has been assigned to your account to **assist your request in being reviewed for the HAMP program** and other workout options.  By the time you receive this letter, Ms. Shelton may have already contacted you, but in the event she has not, we recommend you contact her . . . to discuss Bank of America's review of the account.  **We encourage you to work closely with Ms. Shelton** regarding the account review for possible workout options available.
>
> . . . **Loan modification terms are based on individual homeowner qualification** and their specific financial situation as well as programs available at the time of the application.  Please note that workout assistance is not guaranteed **and is dependent on several factors**.

App. 61.  BANA thereby offered to extend a loan modification on the terms prescribed by HAMP[2], if the Gosses satisfied HAMP's individual homeowner qualification guidelines.  To accept the offer, the Gosses merely had to contact BANA and follow its instructions, which the Gosses did.  App. 14-17 (Compl. ¶¶ 28-34).  Thus, a contract was

---

[2]    In *Spaulding*, this Court offered a detailed and thorough account of the history leading to the development of, nature of, and controversy surrounding HAMP.  2013 WL 1694549 at *2-5.

formed, requiring BANA to offer a HAMP modification if the Gosses met HAMP's detailed, non-discretionary qualification criteria.

Despite working closely with BANA, by, *inter alia*, taking time out of their lives to submit and re-submit paperwork requested by BANA, and despite qualifying under HAMP, BANA refused to offer a modification on the terms prescribed by HAMP. *Id.* Rather, BANA offered a modification on terms that required the Gosses to pay a higher monthly payment than the monthly payment prescribed by HAMP. App. 17-18 (Compl. ¶¶ 35-39). BANA, therefore, breached the contract, and/or the Gosses relied on BANA's promise to their detriment.

BANA has internal policies to ensure most HAMP applications are denied regardless of homeowner eligibility, because BANA often has a financial motive to do so. App. 20-24 (Compl. ¶¶ 47-50). Foreclosure permits BANA to (a) generate revenue from collecting late fees and penalties accrued throughout the foreclosure process, and/or (b) obtain the home for a fraction of the fair market value at a foreclosure auction and then attempt to resell the home for more than the fair market value. *Id.* BANA thus did not intend to keep its promise/offer at the

time it made the promise/offer.  Lacking such present intent, BANA's promise constituted a false statement of material fact.

## V.    SUMMARY OF THE ARGUMENT

A.    Although there is no private right of action under HAMP, a party may bring state law claims that involve HAMP if the elements of the causes of action are properly pled.

B.    The lawsuit is not an attempt to create a private right of action under HAMP.  Rather, the lawsuit is an attempt to enforce a promise.  It is not the homeowner's fault that BANA made HAMP part of the promise.  BANA could have simply used different language, like the servicer in *Spaulding*.

C.    BANA's offer was not illusory, because it did not retain discretion on whether to perform.  Instead, a jury may construe the offer such that performance was controlled by the HAMP Guidelines.

D.    The Gosses accepted the offer and relied to their detriment on the offer.  Although BANA offered a modification, the modification did not comply with HAMP.  Since BANA's original offer was to comply with HAMP, BANA is liable for breach of contract and promissory estoppel.

9

E.   Since BANA had no intent to keep the promise at the time the promise was made, the promise constituted a false statement of fact under settled Maryland law. The Gosses relied to their detriment on the false statement, thus BANA is liable under the Maryland Consumer Protection Act, and is further liable for the torts of Negligent Misrepresentation and Fraud.

F.   In *Spaulding*, this Court held that there was no tort duty because there was no contractual privity with the homeowners. In this case, as argued above, there was a contract. Thus, under *Spaulding*, BANA owed a tort duty. Since BANA failed to adhere to the applicable standard of care (the HAMP Guidelines BANA adopted as part of its offer), BANA is liable for negligence.

G.   Therefore, the complaint states a claim upon which relief may be granted.

# VI.   ARGUMENT

## A.   Standard Of Review

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  Dismissal is not warranted where the complaint states "a claim for relief that is plausible on its face." *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 555 U.S. at 556.

In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  In addition to the complaint, the court may also examine "documents incorporated into

11

the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

> B.    The Lack Of A Private Right Of Action Under The Federal HAMP Program Does Not Preclude Viable State Law Causes Of Action

In *Spaulding*, this Court recognized that "[T]he mere fact that HAMP does not provide a private right of action does not mean that all state law claims affiliated with or related to an unsuccessful HAMP application are necessarily preempted." 2013 WL 1694549 at *10 n.4 (citing *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 581 (7th Cir. 2012)). To hold to the contrary would be to adopt "the novel assumption that where Congress does not create a private right of action for violation of a federal law, no right of action may exist under state law, either." *Wigod*, 673 F.3d at 581. Thus, the district court erred to the extent it ruled the absence of a private right of action under HAMP, standing alone, barred Appellants' claims.

In the present matter, BANA chose language in its offer that adopted the standards prescribed by HAMP. BANA could have used different language that kept BANA in control, such as the language

used by the mortgage servicer in *Spaulding*.  However, BANA did not use such language.  BANA has no one to blame but itself for using language that a jury could read as subjecting BANA to HAMP.

In sum, this lawsuit is not an attempt to create a private right of action under HAMP.  Rather, it is an action to enforce a promise.  The promise just so happened to be defined by HAMP, due to the language BANA chose to use for its offer.

C.    BANA Made A Valid Offer/Promise Upon Which The Gosses Relied To Their Detriment By Virtue Of Their Actions In Accepting The Offer

This case is almost identical to *Spaulding* with one glaring exception – the offer the servicer used in *Spaulding* was illusory because the servicer retained complete discretion over whether to perform by stating, "we determine if you qualify".  2013 WL 1694549 at *12-13.  BANA's offer contained no such qualifying language.  App. 61.

BANA's offer was, essentially, to comply with HAMP if the Gosses qualified for a modification under *HAMP's* criteria.  The Gosses accepted BANA's offer, and thereby relied to their detriment, in a variety of ways, including submitting and resubmitting various application documents at BANA's direction.  *See* App. 47.

13

The Gosses qualified under HAMP. App. 47-50, 124 (HAMP application and hardship affidavit), 64-68 (HAMP qualification criteria). HAMP – or the terms that BANA adopted as part of its promise – mandated a modification. App. 99 (HAMP Guidelines providing when the servicer "must" offer a modification). As such, BANA was required to lower the Gosses' monthly mortgage payment to $1,653. App. 17 (Compl. ¶ 35), 91 (HAMP Guidelines, "Servicers must apply the modification steps enumerated below in the stated order of succession until the borrower's monthly mortgage payment ratio is reduced to 31 percent . . . ."), 91-98 (Detailed HAMP underwriting standards).

Instead, BANA issued a modification that would have only lowered the Gosses' monthly payment to $2,634.67. App. 18 (Compl. ¶ 38). BANA, therefore, breached the contract, or failed to honor the promise it made and upon which the Gosses relied to their detriment. BANA is liable for breach of contract and promissory estoppel.

D.    Alternatively, BANA Entered Into A Contract Under An Implied-In-Fact Theory

In *LaVan v. United States*, 382 F.3d 1340 (Fed. Cir. 2004), the U.S. Court of Appeals for the Federal Circuit held that an implied-in-fact contract was formed between the Government and bank investors.

14

There, the investors applied to the Federal Home Loan Bank Board (FHLBB) to "convert from a state-chartered mutual association to a federally-chartered stock association." *Id.* at 1344. The FHLBB (a) passed a resolution approving the amortization of goodwill for the transaction, and (b) issued an internal memorandum recognizing that goodwill was the focus of the transaction. The court recognized:

> While an implied-in-fact contract shares the same elements as a direct contract, an implied-in-fact contract is founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, *their tacit understanding*.

*Id.* at 1346 (internal quotation marks and alterations omitted). The court then held that the resolution and memo evidenced such a tacit understanding. *Id.* at 1347.

In the case *sub judice*, Bank of America and the homeowners clearly shared a tacit understanding that the application was to be processed under HAMP. First, the homeowners made it clear that, when they submitted the application, they understood it was a HAMP application. App. 158 (Compl. Ex. 10, Robert Goss Aff. ¶ 10 ("My wife and I submitted the May 14, 2012 HAMP application . . .")), 163 (Compl.

Ex. 11, Shirley Goss Aff. ¶ 10 ("My husband and I submitted the May 14, 2012 HAMP application . . .")). Second, Bank of America, in its June 8, 2012 letter, specifically stated it was purporting to offer a "Trial Period Plan". App. 127 (Compl. Ex. 7). At minimum, the existence of a tacit understanding is a jury question.

In addition to this tacit understanding, Bank of America clearly engaged in various conduct that implied an offer to the homeowners (and its other customers) to process a loan modification application under HAMP, in consideration of the homeowners (and other customers) taking the time to complete and submit such an application, as follows:

1. Bank of America publicly entered into an agreement with the U.S. Treasury to participate in and abide by the rules and regulations of HAMP (Compl., *passim*); and

2. Bank of America has consented to the U.S. Treasury publicly listing Bank of America as a HAMP participant on the Internet at http://www.makinghomeaffordable.gov/get-assistance/contact-mortgage/Pages/default.aspx.

This public conduct, in addition to Bank of America's interaction with individual homeowners in connection with HAMP, is the type of conduct that a reasonable juror may believe constitutes an implied-in-fact offer.

E.     Appellee's False Statements In The Collection Of The Consumer Debt Subject It To Liability Under The Maryland Consumer Protection Act And Other "Fraud-Based" Claims

      1.     BANA's False Statement

Normally, a promise or other statement as to a future event may not form a basis for a fraud claim, because such statements are not representations of present fact. However, Maryland law is clear that a promise may be an actionable misrepresentation of a material fact if the defendant did not have the present intent to keep the promise. *Levin v. Singer*, 227 Md. 47, 63-64 (1961); *Mathis v. Hargrove*, 166 Md. App. 286, 312-13 (2005) (". . . in reliance on promises . . . which . . . Mathis and his attorney had no intention to keep . . ."); *Travel Committee, Inc. v. Pan America World Airways, Inc.*, 91 Md. App. 123, 179 (1992) (". . . promissory statements and predictions are not actionable as fraud unless a promise is made with the present intent not to perform it.") (citing *Finch v. Hughes Aircraft Co.*, 57 Md. App. 190, 232 (1984)).

The complaint is clear that BANA never intended to honor its promise to comply with HAMP. App. 24 ¶ 50. BANA's promise, therefore, constituted a false statement.

### 2. Fraud-Based Claims

The Maryland Consumer Protection Act (MCPA), pursuant to § 13-301, defines "unfair or deceptive trade practices" as follows:

> Unfair or deceptive trade practices include any:
>
> (1)    False ... or misleading oral or written statement ... or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;
>
> *    *    *    *    *    *    *    *    *
>
> (14)    Violation of a provision of:
>
> > (i)    This title; [and]
> >
> > *    *    *    *    *    *    *
> >
> > (iii)    Title 14, Subtitle 2 of this article, the Maryland Consumer Debt Collection Act[.]

A mortgage servicer is prohibited from making a misrepresentation in the collection of a mortgage, because § 13-303 provides, "A person may not engage in any unfair or deceptive trade practice ... in: ... (4) The collection of consumer debts".

Once the plaintiff establishes that the defendant made some false statement in the collection of a consumer debt, the defendant becomes

subject to liability for compensatory damages and counsel fees, under §

13-408, which provides:

> (a) ... any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title.

> (b) *Attorneys fees.*- Any person who brings an action to recover for injury or loss under this section and who is awarded damages may also seek, and the court may award, reasonable attorney's fees.

The Act, § 13-302, is clear that "Any practice prohibited by this title is a

violation of this title, whether or not any consumer in fact has been

misled, deceived, or damaged as a result of that practice."

Since the complaint alleges that BANA's promise was a false

statement in the collection of the mortgage, BANA is liable under the

MCPA.   The difference between a MCPA claim and a Negligent

Misrepresentation claim is that the latter requires actual reliance.  The

complaint alleges that the homeowners relied on BANA's false promise.

App. 15 ¶¶ 30-31.  A Common Law Fraud claim further requires intent

to defraud.  The complaint alleges that BANA intended to defraud the

homeowners.   App. 20-23.   The complaint states a claim, and the

district court erred.

F.   Appellee Assumed A Duty When It Agreed To Process Appellants' Loan Modification Application Under HAMP, And This Duty Required Appellee To Adhere To The Applicable Standard Of Care – The Underwriting Standards Outlined By The HAMP Guidelines

In *Spaulding*, this Court held that no tort duty existed because there was no HAMP contract, and thus no privity between the parties sufficient to establish a special relationship.  2013 WL 1694549 at *14 ("[A]ppellants argue that Wells Fargo owed them a duty . . . .  As explained above, contractual privity has not been remotely pled here.").  The Court relied heavily on *Jacques v. First Nat. Bank of Md.*, 307 Md. 527 (1986) in reaching this conclusion.

In *Jacques*, the Court agreed that the facts showed contractual privity – although there was no mortgage already in existence, the bank orally agreed to process a loan application, giving rise to a verbal contract.  *Id.* at 537-38.  In addition to contractual privity, the Court found the following factors significant in ultimately holding that a tort duty existed:

(a)   "The banking business is affected with the public interest" (*Id.* at 542);

(b)     As analogized by the Court, **since objective underwriting standards could be shown,** the bank's assertion that its underwriting involved discretion was no more meritorious than a physician attempting to avoid medical malpractice liability by arguing that medical care involves discretion (*Id.* at 543-44); and

(c)     The Court candidly recognized that, although also a contractual duty, a plaintiff may properly decide to assert the claim in a well-pleaded tort action to seek greater damages (*Id.* at 545).

As argued above, BANA, unlike the *Spaulding* servicer, did enter into a contract. Thus, under *Spaulding* and *Jacques*, BANA owed a duty of care. That duty was defined by the HAMP Guidelines BANA adopted as part of its promise to the homeowners.[3]

In addition to the contractual privity, the other *Jacques* factors are present. The banking business remains affected with the public interest (obvious from the predatory lending that ruined our economy, and which lead to a $700 billion taxpayer bailout based on the fear by

---

[3]     Even without the promise, HAMP is the applicable industry standard for servicers who participate in HAMP.

21

the U.S. Treasury that banks were "too big to fail"). The homeowners allege an identifiable standard – the HAMP Guidelines. Lastly, Appellants were particularly vulnerable and dependent on BANA since negligent processing of the modification request could result in the loss of their entire home.

BANA owed the homeowners a duty. The standard of care required BANA to process the homeowners' application under the HAMP Guidelines it adopted as part of its promise. By failing to do so, BANA deviated from the standard of care, and breached its duty.

## VII. <u>CONCLUSION</u>

For the reasons stated above, the complaint states a claim upon which relief may be granted. The Court should reverse the lower court's order dismissing the action, and remand the action for further proceedings.

Respectfully submitted,

<u>s/ Jason Ostendorf</u>
Jason Ostendorf

Law Office of Jason Ostendorf LLC
One Corporate Center, Suite 400
10451 Mill Run Circle
Baltimore, MD  21117-5594
Telephone: 410.356.8859
Facsimile: 410.356.8804

Dated: May 6, 2013

*Counsel for Appellants Robert Goss and Shirley Goss*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 13-1310        **Caption:** Robert Goss v. Bank of America, N.A.

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   ☑  this brief contains _____ 3978 _____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   ☐  this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   ☑  this brief has been prepared in a proportionally spaced typeface using
   Microsoft Word 2003 _____ [*identify word processing program*] in
   14 pt Century _____ [*identify font size and type style*]; **or**

   ☐  this brief has been prepared in a monospaced typeface using
   _____ [*identify word processing program*] in
   _____ [*identify font size and type style*].

(s) Jason Ostendorf _____

Attorney for Appellants _____

Dated: 05/06/2013 _____

<u>CERTIFICATE OF SERVICE</u>

I certify that on May 6, 2013, I dispatched Towson Copy Center to mail the original and eight copies of the Brief of Appellants to the Clerk of this Court by first-class mail, postage prepaid, at the following address:

> Patricia S. Connor, Clerk
> U.S. Court of Appeals for the Fourth Circuit
> 1100 East Main Street, Suite 501
> Richmond, Virginia 23219-3517

I further certify that on May 6, 2013, I dispatched Towson Copy Center to mail two copies of the Brief of Appellants to opposing counsel by first-class mail, postage prepaid, at the following address:

> Jessica D. Fegan
> Craig R. Houghton
> McGuire Woods LLP
> 7 Saint Paul Street, Suite 1000
> Baltimore, Maryland 21202

*Counsel for Bank of America, N.A.*

s/ Jason A. Ostendorf
(signature)